Economic Power and Construction Company, Respondent, *v.* The City of Buffalo et al., Appellants.

Constitutional law — statutes — public and private acts defined and distinguished — when grant of special franchises not within the subject expressed in the title of an act incorporating a company.

Statutes are either general or special, public or private. A general or public act is a universal rule that regards a whole community. Private acts relate to certain individuals or to particular classes of men.

Every act incorporating a company for private gain and generally all acts relating to a single corporation are private acts, while an act relating to all corporations is a public act.

Ample provision is made by general acts for corporations to acquire special franchises, and when a special franchise is given in a private act to incorporate a company it can only be sustained because such special franchise is a necessary incident to the corporation formed.

The mere fact that a corporation is obligated to perform public duties and is endowed with certain rights which depend upon public use does not make it a public corporation, nor the act under which it is incorporated a public act. The real character of an act, so far as it relates to the constitutional provision prohibiting the passage of a private or local bill embracing more than one subject unless it is expressed in the title, cannot be changed by a statement therein by the legislature.    ·

The purpose of section 16 of article 3 of the Constitution of this state was that neither the members of the legislature nor the public should be misled by the title of a bill. It was intended that every local subject should stand upon its own merits, and that the title of each bill should indicate the subject of its provisions, so that neither the legislature nor the public would be deceived. The title must be such at least as fairly to suggest or give a clue to the subject dealt with in the act, and unless it comes up to that standard it falls below the constitutional requirement.

A statute entitled " An act to incorporate the Economic Power and Construction Company " (L. 1893, ch. 459) provided that the general purpose of such corporation should be the " transmission and utilization of power at or between any points selected from time to time within this state, for any purpose whatsoever," except as thereinafter specified. · Section 5 empowered such corporation to construct and operate tubes for the utilization of the power to be supplied by it and to enter upon and use for either or all of the purposes of its incorporation, the soil under any street or public place, or to use the structures thereon, or the ground under any highway and to take possession of such real property as might be necessary or convenient to accomplish its purposes under the charter, and to exercise the right of eminent domain as to such real property. The purpose of the bill is declared to be a public purpose and the use of such property by the corporation to be a public use. Section 6 authorized the corporation to lease or sell the whole or any part of its property or franchises. *Held*, that the act is a private bill within the meaning of section 16 of article 3 of the State Constitution, and that the grants of special franchises in section 5 and all of section 6 of the act are not within the subject expressed in its title and are void.

*Economic Power & Construction Co.* v. *City of Buffalo*, 128 App. Div. 883, reversed.

(Argued March 16, 1909; decided May 4, 1909.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered September 25, 1908, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

An act was passed by the legislature of the state of New

York in 1893 and approved by the governor April 22, 1893, with the following title: "An act to incorporate the Economic Power and Construction Company." It is chapter 459 of the Laws of that year, and section 1 provides that certain persons named therein, "and their associates, successors and assigns, are hereby created a body corporate and politic by the name of the Economic Power and Construction Company and by that name shall have perpetual succession and may sue and be sued in any court. The general purpose of such corporation shall be and it is hereby authorized and empowered, to do each any, and every thing necessary not inconsistent with the laws of the state for the creation, transmission and utilization of power at or between any points selected from time to time within this state for any purpose whatsoever except as hereinafter specified and to make such charges therefor as it may agree by public or private contract." It provides also where the principal place of business of the company shall be located and also as to the acts of the incorporators prior to and including the adoption of the by-laws of the corporation.

Section 2 provides the amount of its capital stock, how the same may be increased and for the transfer thereof, and also for borrowing money and securing the payment thereof.

Section 3 provides for the election of directors and prescribes their powers and duties; it provides for filling vacancies in the board and for the appointment and election of officers.

Section 4 provides for the number of votes which each stockholder shall have and for issuing the capital stock.

Sections 5 and 6 are as follows: "§ 5. The said corporation is hereby empowered without other or further authority, of law or ordinance, to do any or all of the following: To build, purchase or lease engines, power stations, and such machinery and to do such other acts as may be necessary for the purposes of the corporation, and to locate, construct, maintain and operate a tube or tubes for the utilization and transmission of the power to be furnished and supplied by

said corporation, and for any, either or all of said purposes said corporation may enter upon and use the ground or soil under any street, avenue, public place or premises or use the structures upon any street, avenue or public place, or use the ground or soil upon or under any highway, turnpike or road and such corporation shall have the right, and it is hereby empowered to enter upon and take possession of such real property or such right, title, interest or easement therein as may be necessary or convenient to accomplish the purposes for which this charter is given or in the exercise of the powers herein conferred, which are hereby expressly declared to be a public purpose and their use by said corporation a public use. All such real property or right, title, interest or easement therein shall be purchased of the owner or owners at a price to be mutually agreed upon, or the said corporation shall have the right to acquire the same by condemnation proceedings, as provided by chapter twenty-three, title one of the code of civil procedure of the state of New York, and acts amendatory thereof, or supplemental thereto."

" § 6.  Said corporation shall have the right and authority to lease or sell the whole or any part of its corporate property or franchises from time to time to any other corporation organized under the laws of this state by and with the approval of the votes of two-thirds of the board of directors of the corporation hereby created."

Section 7 provides that the corporation shall in addition to the powers granted " possess the general powers and privileges granted to corporations by and contained in the general corporation law, and the stock corporation law."

Section 8 provides in regard to the individual liability of the stockholders.

Section 9 provides certain limitations upon the maintenance of actions against stockholders.

Section 10 provides what shall be stated in the required annual reports of the corporation.

Sections 11 and 12 are as follows : " § 11.  Nothing in this act shall be construed to permit such corporation to do a

passenger or railway business nor to lay down railroad tracks, and said corporation shall not be permitted to transmit or deliver mails, newspapers or parcels."

" § 12.    This act shall take effect immediately."

The plaintiff asserts and it has been found by the court in substance that after the passage of said act it perfected its organization and that it has ever since been and now is a corporation with the powers therein described.    In January, 1907, it filed with the commissioner of public works in the city of Buffalo a written statement of its intention to lay steam mains in trenches in certain streets in the city of Buffalo for the transmission of steam power for heating purposes in residences, places of business, manufacturing establishments and other buildings generally in said city, and in the same trenches to lay conduits for the transmission of electrical power for general lighting and power purposes to be generated by the same steam so to be used for heating purposes, and in connection therewith it filed plans and specifications of its proposed trenches, steam power mains and electric power conduits.    Thereafter said commissioner submitted to the common council of said city said statement, plans and specifications, but no action has been taken thereon by said commissioner or by said common council.    Subsequently and in September, 1907, the plaintiff sent a further communication to the said commissioner of public works and also to said common council stating in substance that it was its intention to enter upon the streets of said city and begin the construction of its trenches and conduits at a time in said notice specified.    The court found that the plans and specifications proposed by the plaintiff were in all respects proper, reasonable and adequate for the protection of said city, its citizens and streets.    The plaintiff began the work of excavation as stated in said notice but was prevented from continuing the same by the defendants.    This action was then brought to restrain the defendants from in any way interfering with the plaintiff, its officers and contractors in the work of excavating trenches in the streets of said city and laying and constructing

its steam mains and electric conduits and other necessary structures connected therewith in the manner proposed by it in its said communication to the commissioner of public works of said city. Judgment was rendered at Special Term in favor of the plaintiff. An appeal was taken to the Appellate Division where the judgment was affirmed by a divided court. From such judgment of affirmance the appeal is taken to this court.

*Louis E. Desbecker, Corporation Counsel (John W. Ryan* of counsel), for appellants. That part of the special act of incorporation by which the legislature attempted to confer upon the corporation so formed a special franchise is invalid because not expressed in the title of the act as required by section 16, article 3 of the State Constitution. (*Dartmouth College* v. *Woodward*, 4 Wheat. 668; 1 Clark & Marshall on Priv. Corp. 64; *Rundle* v. *D. & R. Canal*, 1 Wall. Jr. 290; *Matter of N. Y. El. Ry. Co.*, 70 N. Y. 350; *Mayor, etc.*, v. *N. Y. & H. R. R. Co.*, 10 Misc. Rep. 417; *Harris* v. *People*, 59 N. Y. 600; *People* v. *Brinkerhoff*, 68 N. Y. 265; *Matter of Paul*, 94 N. Y. 506; *Matter of Mayor, etc.*, 99 N. Y. 577; *Coxe* v. *State*, 144 N. Y. 409; *People ex rel. Corscadden* v. *Howe*, 177 N. Y. 504.)

*Simon Fleischmann, D-Cady Herrick, Herbert P. Bissell* and *George C. Riley* for respondent. The plaintiff's act of incorporation, "An Act to incorporate the Economic Power and Construction Company," embraces only one subject, which is expressed in its title, and, therefore, does not violate section 16 of article 3 of the Constitution of the state of New York. (*Astor* v. *A. Ry. Co.*, 113 N. Y. 93; *People* v. *Briggs*, 50 N. Y. 553; *Kerrigan* v *Force*, 68 N. Y. 384; *Matter of Metropolitan Co.*, 85 N. Y. 526; *Freeman* v. *P. R. R. Co.*, 7 Hun, 122; *Harris* v. *Bd. of Suprs.*, 33 Hun, 279; *People* v. *Comrs.*, 47 N. Y. 501; *Harris* v. *People*, 59 N. Y. 599; *People* v. *Supervisors*, 43 N. Y. 10; *People* v. *Webster*, 8 Misc. Rep. 135.) The right given to plaintiff

under its act of incorporation to use the public streets and highways for its conduits was simply one of the powers conferred, and not a grant or conveyance of property of the state requiring special mention in the title of the act. (*Trustees* v. *Roome*, 93 N. Y. 313; *People* v. *Supervisors*, 8 N. Y. 324; *Englishbe* v. *Helmuth*, 3 N. Y. 294; *Kittinger* v. *B. T. Co.*, 160 N. Y. 377; *Sweet* v. *City of Syracuse*, 129 N. Y. 316; *Smith* v. *Metropolitan Co.*, 12 How. Pr. 187; *Matter of Taxpayers of Kingston*, 4 How. Pr. 444; *Kellinger* v. *F. S. St. R. R. Co.*, 50 N. Y. 209; *People* v. *Kerr*, 27 N. Y. 186.)

Chase, J. The appellants contend that the act of the legislature under which the plaintiff claims to have been incorporated is in violation of article 3, section 16, of the Constitution of the state of New York which provides as follows : " No private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title."

Our first inquiry is whether the act in question is a private bill. Blackstone in his Commentaries (Vol. 1, p. 86), says : " Statutes are either general or special, public or private. A general or public act is an universal rule, that regards the whole community ; and of this the courts of law are bound to take notice judicially or *ex officio.* * * * Special or private acts are rather exceptions than rules, being those which only operate upon particular persons, and private concerns ; such as the Romans entitled *senatus decreta*, in contradistinction to the *senatus consulta,* which regarded the whole community. * * * Thus, to show the distinction, the statute 13 Eliz. c. 10, to prevent spiritual persons from making leases for longer terms than twenty-one years, or three lives, is a public act; it being a rule prescribed to the whole body of spiritual persons in the nation : but an act to enable the Bishop of Chester to make a lease to A. B. for sixty years is an exception to this rule ; it concerns only the parties and the bishop's successors ; and is therefore a private act."

Kent in his Commentaries (Volume 1, 459) referring to public and private statutes says: " The most comprehensive, if not the most precise, definition in the English books is, that public acts relate to the kingdom at large, and private acts concern the particular interest or benefit of certain individuals or of particular classes of men. Generally speaking, statutes are public; and a private statute may rather be considered as an exception to a general rule. It operates upon a particular thing or private persons."

In the celebrated case of *Trustees of Dartmouth College* v. *Woodward* (4 Wheaton, 518, 561) Justice Story, referring to the grant from George the Third to John Wentworth and others by which the corporation known as " The Trustees of Dartmouth College " was formed, and in discussing the distinction between public and private corporations, says: " Public corporations are generally esteemed such as exist for public politic purposes only, such as towns, cities, parishes, and counties; and in many respects they are so, although they involve some private interests; but strictly speaking, public corporations are such only as are founded by the government for public purposes, where the whole interests belong also to the government. If, therefore, the foundation be private, though under the charter of the government, the corporation is private, however extensive the uses may be to which it is devoted, either by the bounty of the founder, or the nature and objects of the institution. For instance, a bank created by the government for its own uses, whose stock is exclusively owned by the government, is, in the strictest sense, a public corporation. So a hospital created and endowed by the government for general charity. But a bank, whose stock is owned by private persons, is a private corporation, although it is erected by the government, and its objects and operations partake of a public nature. The same doctrine may be affirmed of insurance, canal, bridge, and turnpike companies. In all these cases, the uses may, in a certain sense, be called public, but the corporations are private; as much so, indeed, as if the franchises were vested in a single person. This reasoning applies in its full force

to eleemosynary corporations. A hospital founded by a private benefactor is, in point of law, a private corporation, although dedicated by its charter to general charity. So a college, founded and endowed in the same manner, although, being for the promotion of learning and piety, it may extend its charity to scholars from every class in the community, and thus acquire the character of a public institution."

All corporations organized pursuant to general or special statutes which are engaged in the transportation of persons or property, or in any business directly affecting the public, partake somewhat of the nature of both private and public corporations. They have to do with what in modern times are called public utilities, and are known as *quasi* public corporations. They are, however, private corporations in their ownership and in the distribution of their profits.

In *Rundle* v. *Del. & R. Canal* (1 Wall. Jr. 275) the court say : " In the popular meaning of the term nearly every corporation is public, inasmuch as they are all created for the public benefit. Yet if the whole interest does not belong to the government, or if the corporation is not created for the administration of political or municipal power, it is a private corporation. Thus all bank, bridge, turnpike, railroad and canal companies are private corporations. In these and other similar cases, the uses may in a certain sense be called public, but the corporations are private, as much so as if the franchises were vested in a single person."

So far as such corporations undertake a public work, and become obligated to perform in common to all a public service, they are affected with such a public use as to sustain a grant to them of the right to exercise the power of eminent domain. (*Pocantico Water Works Co.* v. *Bird*, 130 N. Y. 249.) The act in question gives to the plaintiff the right to exercise the power of eminent domain, and it declares the rights conferred upon it to be for a public use. The legislature doubtless could have provided further that the act should be deemed a public act for certain purposes of procedure. (*Case* v. *Kelly*, 133 U. S. 21.) The real character of the act, however, so far

as it relates to such constitutional provision, cannot be changed by a statement therein by the legislature.   We do not find in the act any express provision giving to municipalities or individuals authority to demand the delivery of power to be transmitted and utilized by the corporation formed under the act, or to obtain from it the right to take and use the same at a price in common with all others similarly situated.   The public use must be more than an incidental one.   (*Matter of Application of Eureka B. W. & M. Co.*, 96 N. Y. 42.)

We will assume for the purpose of this decision that the plaintiff by the exercise of the power of eminent domain would assume the obligation of furnishing power to all persons in common who should apply for the same, and that it could not in any event by ignoring or failing to exercise the power of eminent domain free itself from all public obligations; it cannot in any event free itself from the effect of the constitutional provision by claiming that the act under which it is incorporated is a public bill.   (Black's Constitutional Law, Hornbook Series, 318.)   The mere fact that a corporation is obligated to perform public duties and is endowed with certain rights which depend upon public use does not make a corporation a public corporation, nor the act under which it is incorporated a public act.

The right to exercise the power of eminent domain may be vested in private corporations which may be actuated solely by motives of private gain if the use to be made thereof is for the benefit of the public.   (*Pocantico Water Works Co.* v. *Bird, supra.*)   Every act incorporating a company for private gain and generally all acts relating to a single corporation are private acts, while an act relating to all corporations would be a public act.

So far as we have been able to discover it has never before been seriously contended that an act incorporating a company with private capital to be solely controlled by a board of directors selected from the stockholders and the profits of which are to be divided upon the capital stock is not a private corporation.   This court has frequently held or assumed that

public service corporations are private corporations and that the acts incorporating or relating to such a corporation are private acts. (*Matter of New York Elevated R. R. Co.*, 70 N. Y. 327, 350; *Astor* v. *Arcade Ry. Co.*, 113 N. Y. 93; *Mayor, etc., of N. Y.* v. *Manh. Ry. Co.*, 143 N. Y. 1; *Coxe* v. *State of N. Y.*, 144 N. Y. 396; *Matter of N. Y. & L. I. Bridge Co.* v. *Smith*, 148 N. Y. 540; *Parker* v. *Elmira, C. & N. R. R. Co.*, 165 N. Y. 274.)

The act incorporating the plaintiff is a private bill within the meaning of the constitutional provision. If it contains more than one subject, or the subject is not expressed in its title, it offends against such provision. Such constitutional provision is first found in the Constitution of 1846, since which time it has been the subject of very frequent consideration by all of our courts. The purpose of the provision has been so frequently and well stated by this court that a reference to some of such statements of its purpose will avoid a further repetition of the same thought in substantially the same language.

The purpose of the sixteenth section was that neither the members of the legislature nor the public should be misled by the title. (*Sun Mutual Ins. Co.* v. *Mayor, etc., of N. Y.*, 8 N. Y. 241, 253.) The provision of the Constitution was adopted to check and prevent certain evils of legislation, and should be enforced by courts whenever it has been substantially violated. Its object was twofold. *First*, to prevent a combination of measures in local bills and secure their passage by a union of interests commonly known as "log-rolling." *Second*, to require an announcement of the subject of every such bill to prevent the fraudulent insertion of provisions upon subjects foreign to that indicated in the title. It was intended that every local subject should stand upon its own merits, and that the title of each bill should indicate the subject of its provisions so that neither legislators nor the public would be misled or deceived. (*People ex rel. City of Rochester* v. *Briggs*, 50 N. Y. 553, 558; *People ex rel. Lee* v. *Supervisors of Chautauqua*, 43 N. Y. 10, 22.)

The object of the constitutional provision was to advise the public and the locality and the representatives of the locality and of other parts of the general purpose of the bill so that those interested might be on their guard as to the whole or as to the details. (*Harris* v. *People*, 59 N. Y. 599, 602.) To advise the public in general and members of the legislature in particular by the title of the bill what interests are likely to be affected by its becoming a law. (*People ex rel. Burroughs* v. *Brinkerhoff*, 68 N. Y. 259, 265.) The object is that legislators and the public may be informed by the title of the general nature of provisions proposed to be enacted and to prevent deception. (*Matter of N. Y. & Brooklyn Bridge*, 72 N. Y. 527, 533.) It was to prevent such a title that a legislator who should judge of the bill by its title might deem it proper or harmless, and find too late that the period of objection or resistance was gone. If the law had borne a true, and not a false label, warning would have been given. (*Matter of Application of Paul*, 94 N. Y. 497, 506.) The most valuable test of such a title, and the one which we have usually employed, is the inquiry whether the title was so framed as to be deceptive or misleading, and consummated the evil at which the constitutional prohibition was aimed. Where one reading a proposed bill with the title in his mind comes upon provisions which take him by surprise, which he could not reasonably have anticipated, and so both citizen and legislator are misled and thrown off their guard, it is our duty to declare the condemnation of the fundamental law. (*Matter of Application of Mayor, etc., of the City of N. Y.*, 99 N. Y. 569, 576.) Its purpose is to prevent fraud and deception by concealment, in the body of acts, subjects not by their titles disclosed to the general public and to legislators, who may rely upon them for information as to pending legislation. When the subject is expressed, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act and are germane to the title. The title must be such at least as fairly to suggest or to give a clue to the subject dealt with in the act, and unless

it comes up to this standard, it falls below the constitutional requirement. (*Astor* v. *Arcade Ry. Co.*, 113 N. Y. 93, 109.) The title of an act should not be misleading and wholly insufficient as an expression of the subject of the act. It should not give a false idea as to the subject and nature of the legislation actually embodied in the bill. (*Mayor, etc., of N. Y.* v. *Manh. Ry. Co.*, 143 N. Y. 1, 23.) Without inquiring whether any of these subjects (expressed in chapter 864 of the Laws of 1868) are germane to or so connected with the one expressed in the title (to authorize the drainage of marsh lands) as to escape the objection, it is quite clear that no citizen or member of the legislature would expect to find such an extraordinary grant from the state of lands under water in the body of the bill with such a title, and that is the fair test of the question. (*Coxe* v. *State of N. Y.*, 144 N. Y. 396, 409.). The object of the constitutional requirement was to advise the public in general and members of the legislature in particular by the title of the bill what interests are likely to be affected by its becoming a law. Therefore it is very apparent that the title of a bill may be so limited as to exclude provisions which unquestionably could fairly be enacted in a single statute with a more comprehensive title. The title must fairly express the general purpose of the bill. (*People ex rel. Corscadden* v. *Howe*, 177 N. Y. 499, 505.)

It is unnecessary to consider further whether all of the provisions of sections five and six of the act are within the subject thereof. The serious question presented by the defendants is whether the title fairly expresses to the legislators and the public the subject of the act or whether it is deceptive, misleading and consequently violative of the Constitution even if it could be sustained if it had been given a more comprehensive title. The expression of the subject of the act must be found, if at all, in the words of its title, and it cannot be inferred or helped out by reason of the act being local or private.

It is provided by article 8, section 1, of the Constitution that " corporations may be formed under general laws ; but shall not be created by special act, except for municipal purposes,

and in cases where, in the judgment of the legislature, the objects of the corporation cannot be attained under general laws." It is claimed by the plaintiff that among other acquired energy it desired to manufacture and supply gas and create electricity for power and for lighting the streets and highways and public and private buildings, and also to supply steam for power and heating from a central station through pipes laid in the public streets and highways, and that the general statutes did not permit the incorporation of a company with power to do all of the things so desired and desirable by it, and that for such reason it was necessary for it to obtain from the legislature a special act of incorporation.

It may be assumed that the facts present a case where the determination of the legislature that the object of the incorporation could not be obtained under general laws is controlling upon the courts. (*People* v. *Bowen*, 21 N. Y. 517.) The simple fact that the act is a local or private act for the incorporation of a company did not require a special examination of the act itself to see if it contained provisions relating to special franchises not expressed in the title of the act. Ample provision is made by general acts for corporations to acquire a special franchise or franchises from municipalities, and the Constitution in no way asserts that corporations may be formed by local or private acts when the object is to obtain special franchises by wholesale or in bulk. The only suggestion arising from the fact that a local or private bill is before the legislature for the purpose of creating a corporation is that the proposed corporation cannot obtain its object as a corporation by general laws. Its power to do business as a corporation and not a gift of special franchises in municipalities without local consent or consideration is suggested by the private act. We are not aware of any failure in the general laws to provide a way for corporations to obtain special franchises, and it is not necessary to go to the legislature to acquire them.

What is the subject of the bill as stated in the title? It is the incorporation of a power and construction company —

that is, giving to an artificial being a legal existence. The necessary and incidental provisions in a certificate of incorporation are stated by the legislature in the various general acts for the organization of corporations. The certificate of incorporation under a general act is a statement prescribed by the legislature which takes the place of a private act incorporating a company. We would expect the legislature to put in a private act incorporating a company substantially the same general and incidental provisions that it requires in a certificate of incorporation under a general act for the same purpose or purposes.

Such provisions were put in the act in question and they are appropriate and germane to the general subject of incorporation. When a special franchise is given in a private act to incorporate a company it can only be sustained because such special franchise is a necessary incident to the corporation formed. The name of the corporation included in the title of the act may clearly indicate the necessity for a special franchise from some source or the name so included in the title may lead the legislators and the public to assume that a special franchise is not only not necessary, but not appropriate to such a corporation. The name of a corporation, therefore, may materially affect the question as to whether a special franchise granted by the act can be sustained. If the name given to a corporation in a local or private bill indicates that it is formed for manufacturing purposes it would not in itself so express the subject of the bill as to indicate that a special franchise might be found therein. Or if the corporation named therein included the name of a town it would not even, if a special franchise was necessary therefor, so express the subject of a bill as to require an examination thereof by representatives or citizens of every other town in the state to see whether a special franchise had been granted extending beyond the boundaries of the towns indicated by the name of the corporation. (*Matter of Sackett, Douglas and De Graw Streets,* 74 N. Y. 95.) Where the title of an act including the name of a corporation was such that the busi-

ness to be conducted by the corporation would necessarily require a special franchise from some source it was frequently included in a private bill prior to 1893. In substantially every instance, however, the special franchises so given were made dependent upon the consent of local municipal authorities and were not of material, if any, value to the corporation formed. In no other case that has come to our attention has an unlimited special franchise with power to lease or sell the same in whole or in part been granted by the legislature of this state. Conceding, as we may, in this case that where a special franchise from some source is absolutely necessary for the conduct of the business indicated by the title of the act that such a special franchise is incidental to a statement of the corporate powers, it does not follow that the extraordinary franchise stated in section 5 and the right to traffic therein as provided by section 6 were a part of the subject expressed in the title of the bill in question.

Referring again to the title of the act we find the word " construction " which suggests building, erecting and manufacturing. The claim of the plaintiff that the grant of a special franchise is incidental to the incorporation of the company is dependent wholly upon the use of the word " power." The word " power " is used in connection with the word " construction," and together they do not give any clear indication of a business necessarily requiring a special franchise. It is rather to be inferred that the power is to be used in connection with the construction of something not disclosed, or if power is to be distributed by the corporation, that it may not be extended beyond the limits of business property bounded by streets or highways. Does the title of the act give any notice whatever that within the act may be found a grant of a special franchise to use the streets, highways and public places in conducting every business coming within the broadest conception of the " creation, transmission and utilization of power," not only in the city where the principal office of the corporation is to be located, but in every city, village and township throughout the state? We think not.

The right to use the streets, highways and public places throughout the state without qualification or limit, read in connection with the power to lease or sell the whole or any part of the same to any other corporation, is so very extraordinary as to overcome every thought of the same being an incident to the incorporation of a power and construction company. The grant coupled with the right to traffic in such franchises without the consent of or compensation to municipalities is of such importance and value as entirely to overshadow the avowed subject of the act itself.

We believe that the diligence and ability of counsel for the plaintiff (although they were not responsible for the passage of the act) have brought to our attention every authority and argument which can aid in sustaining the special franchises stated in the act, but after weighing every consideration, we are clearly of the opinion that they were concealed below a title that does not express the subject of the act so far as it relates to such special franchises.

The spirit of the Constitution, which is against concealment and in favor of publicity, has been violated. The act affects every citizen as well as every municipality throughout the state. Its title did not give any fair or reasonable expression of the subject thereof. It was for the purposes now claimed for it delusive, deceptive and misleading. The wholesale right to use the public streets and places for all purposes claimed by the plaintiff could not reasonably have been anticipated therefrom. (*People* v. *O'Brien,* 38 N. Y. 193; *People ex rel. Schenectady Astronomical Observatory* v. *Allen,* 42 N. Y. 404; *Matter of N. Y. Elevated R. R. Co.,* 70 N. Y. 327; *Matter of Sackett, Douglas and De Graw Streets,* 74 N. Y. 95; *Matter of Blodgett,* 89 N. Y. 392; *Matter of Application of Paul,* 94 N. Y. 497; *Astor* v. *Arcade Ry. Co.,* 113 N. Y. 93; *Mayor, etc., of N. Y.* v. *Manh. Ry. Co.,* 143 N. Y. 1; *Coxe* v. *State of N. Y.,* 144 N. Y. 396; *Matter of N. Y. & L. I. Bridge Co.,* 148 N. Y. 540; *People ex rel. Corscadden* v. *Howe,* 177 N. Y. 499; *Cahill* v. *Hogan,* 180 N. Y. 304; *Falkner* v. *Dorland,* 54 N. J. Law, 409; *Wade* v.

*Atlantic Lumber Co.*, 41 South. Rep. 72 ; *State* v. *McKinney*, 29 Mont. 375.)

The grants of special franchises in section five and all of section six of the act are not within the subject expressed in the title of the act and are void.

The judgment should be reversed and the complaint dismissed, with costs in all courts.

CULLEN, Ch. J., VANN, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur ; HAIGHT, J., takes no part.

Judgment reversed, etc.