(164 App. Div. 548)

## ONEONTA LIGHT & POWER CO. v. SCHWARZENBACH et al.
### (No. 249-88.)

(Supreme Court, Appellate Division, Third Department.   November 25, 1914.)

1. STATUTES (§ 112*)—TITLES AND SUBJECTS OF ACTS.

   Laws 1898, c. 234, the title of which recites that it is "An act to incorporate the Electric Water Power Company of Oneonta," provides that such corporation may construct and operate all necessary dams, reservoirs, etc., for the proper use of the water of a river in the development of hydraulic and electrical power, and for generating electricity for heating, lighting, and other purposes, and acquire lands necessary for carrying into effect its powers, and accumulate and store water, and sell, lease, etc., power developed from such water, and dispose of the electricity generated by such power, that it may acquire lands by condemnation, and that it shall possess all the powers and be subject to the same liabilities as a corporation organized under the general law of the state. *Held*, that such act does not violate Const. art. 3, § 16, providing that no private or local bill shall embrace more than one subject, and that shall be expressed in the title. as the title indicates the necessity for a franchise to operate a water power, and it would be assumed from the title that the purposes and powers of the corporation would be specified, while no person reading the bill with the title in mind would be surprised by the provision authorizing the acquisition of land by condemnation.

   [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 140½ ; Dec. Dig. § 112.*]

2. EMINENT DOMAIN (§ 10*)—ELECTRIC LIGHT COMPANIES—STATUTORY PROVISIONS.

   Transportation Corporations Law (Consol. Laws, c. 63) § 61, providing that any electric light company in any town or village, having a contract with any town or incorporated village for the lighting of streets, etc., in any town or village, shall have the right to acquire real estate necessary for the purposes of its incorporation, or to acquire a right of way through any property in the same manner as waterworks companies under the general condemnation law of the state, is applicable only to towns and villages, and not to cities.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 35-48 ; Dec. Dig. § 10.*]

3. STATUTES (§ 79*) — LOCAL OR SPECIAL BILLS — CONSTITUTIONAL RESTRICTIONS.

   Laws 1898, c. 234, incorporating an electric water power company, does not violate Const. art. 3, § 18, providing that the Legislature shall not pass a private or local bill in any of the cases therein specified.

   [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 84, 85 ; Dec. Dig § 79.*]

4. CONSTITUTIONAL LAW (§ 70*)—STATUTES—DETERMINATION OF VALIDITY—JUDICIAL AUTHORITY.

   Under Const. art. 8, § 1, providing that corporations shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the corporation, the objects of the corporation cannot be attained under general laws, whether a special act is necessary rests wholly in the legislative discretion, and is not subject to judicial review.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129-132, 137 ; Dec. Dig. § 70.*]

5. EMINENT DOMAIN (§ 35*)—"PUBLIC USE"—ELECTRIC POWER OR LIGHT.

   Where a corporation had contracted with a city to furnish electric light for the streets and other public places and buildings of the city, to furnish light and power to applicants within the city upon reasonable no-

---

tice and at a reasonable price, and to provide a duplicate system against emergencies, land overflowed by its dams, maintained for the purpose of carrying out such contract and furnishing such light and power, was taken for a "public use."

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 80; Dec. Dig. § 35.*

For other definitions, see Words and Phrases, First and Second Series, Public Use.]

6. EMINENT DOMAIN (§ 14*)—PUBLIC USE—PRIVATE BENEFIT.

Where the intended use of an improvement, sought to be accomplished through an exercise of the right of eminent domain, is not restricted to private parties or private interests, but is open to the whole public, it is no objection to the act authorizing it that it will benefit one person or class of persons more than others, or that it originated in private interests and was intended in some degree to subserve private purposes.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 54; Dec. Dig. § 14.*]

7. EMINENT DOMAIN (§ 56*)—"NECESSITY" OF APPROPRIATION.

The "necessity" for land sought to be condemned by an electric light and power company, which will justify its condemnation, need not be an absolute necessity, but only a reasonable necessity of the corporation in the discharge of its duty to the public.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 147–160; Dec. Dig. § 56.*

For other definitions, see Words and Phrases, First and Second Series, Necessity.]

8. EMINENT DOMAIN (§ 265*)—COSTS—OFFERS BY CONDEMNING PARTY.

Code Civ. Proc. § 3372, providing, relative to condemnation proceedings, that where the owner is a resident, and not under legal disability to convey real property, plaintiff may make a written offer to purchase the property at a specified price, and that if the offer is not accepted, and the compensation awarded by the commissioners does not exceed the amount of the offer, with interest, no costs shall be allowed, did not apply where the owners were nonresidents of the state; and the costs were in the discretion of the court, under section 3240, providing that costs in a special proceeding, when not specially regulated, may be awarded to any party, in the discretion of the court, at the rates allowed for similar services in an action.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 400, 690–693; Dec. Dig. § 265.*]

9. EMINENT DOMAIN (§ 265*)—COSTS—OFFERS BY CONDEMNING PARTY—JUST COMPENSATION.

A corporation, not authorized to exercise the right of eminent domain, made an offer to purchase the land for a price exceeding the award in a subsequent proceeding, brought after a merger of such corporation with a corporation authorized to exercise such power. The offer was apparently not recognized by either party as a continuing offer, and no offer was apparently made in the subsequent proceeding; it being conceded by both parties that an effort to agree upon the value of the land had been made, but that they had been unable to agree. The only witness for plaintiff as to the value of the land placed its value at $25, while the commissioners awarded $325. Held, that the Special Term did not err in imposing costs upon plaintiff, as, under Const. art. 1, § 6, requiring that private property shall not be taken for public purposes, except upon payment of "just compensation," the party whose property is taken by condemnation should ordinarily recover the necessary expenses incurred in fixing its value.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 400, 690–693; Dec. Dig. § 265.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**10. EMINENT DOMAIN (§ 265*)—COSTS—EVIDENCE—BURDEN OF PROOF.**

In a condemnation proceeding, if plaintiff intended to ask an exemption from costs by reason of an offer to purchase the land for more than the award, or to have defendants charged with costs by reason thereof, it was incumbent upon it, on a motion to confirm the report of the commissioners, to prove such offer.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 400, 690–693; Dec. Dig. § 265.*]

Appeal from Trial Term, Otsego County.

Condemnation proceeding by the Oneonta Light & Power Company against Arthur Schwarzenbach and others. From a final order confirming the report of commissioners of appraisal, defendants appeal, with notice of intention to bring up for review the interlocutory judgment; and from so much of such order as awards costs to defendants, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Thompson & Van Woert, of Oneonta, for plaintiff.

Alva Seybolt, of Oneonta, for defendants.

LYON, J. This proceeding was instituted by the plaintiff, which is the owner of and engaged in operating an electric plant by both water and steam power, situate in the town of Oneonta, Otsego county, N. Y., to condemn the right to overflow 3.87 acres of land, a portion of which is now covered by the water of plaintiff's dam. The final order appealed from by the defendant confirmed the report of commissioners appointed to ascertain the compensation to be made therefor to the defendants Schwarzenbach, who are the owners thereof, but awarded the costs of the proceeding to said defendants, who reside in the state of New Jersey; the defendant Haines being the tenant of the property and residing within this state.

[1] The defendants place their main reliance for success upon this appeal upon the claim that chapter 234 of the Laws of 1898, entitled "An act to incorporate the Electric Water Power Company of Oneonta, Otsego County," with which company the plaintiff was merged in September, 1911, confers no right of condemnation, for the reason that the act contravenes section 16 of article 3 of the state Constitution which provides that no private or local bill, which may be passed by the Legislature, shall embrace more than one subject, and that that shall be expressed in its title, and also contravenes section 18 of that article, which provides that the Legislature shall not pass a private or local bill in any of the cases enumerated in that section. The act above referred to, which is concededly a private or local bill, provides in part as follows:

"Sec. 2. Such corporation may construct, maintain and operate upon the Susquehanna river, at any and all points within the town of Oneonta, * * * all necessary dams, reservoirs, * * * canals and other appliances, for the proper use of the water of such river in the development of hydraulic and electrical power and for generating electricity for heating, lighting and other purposes. Such corporation may acquire lands necessary for carrying into effect the powers granted by this act; * * * may accumu-

late and store water from such Susquehanna river and sell, lease, furnish and operate power developed from the flow or storage of such water; may dispose of the electricity generated by such power for heating, lighting and other purposes to any municipality, corporation, association or person, and shall ·have all the powers of a corporation organized under the transportation corporations law in the state in respect to the furnishing of electricity to municipalities and the inhabitants thereof.  *  *  *

"Sec. 4. Such corporation may acquire lands by condemnation in the manner provided by the condemnation law of the state for any of the purposes herein specified.  *  *  *

"Sec. 5. Such corporation shall possess all the powers and be subject to the same liabilities as a corporation organized under the general law of this state."

As bearing upon the claim of the defendant that the act in question is violative of section 16 of article 3, the following decisions are in point.

In matter of Application of Mayor, etc., of the City of New York, 99 N. Y. 569, 577, 2 N. E. 642, 643, the court said:

"Where one, reading a proposed bill with the title in his mind, comes upon provisions which take him by surprise, which he could not reasonably have anticipated, and so both citizen and legislator are misled and thrown off their guard, it is our duty to declare the condemnation of the fundamental law."

In Astor v. Arcade Railway Co., 113 N. Y. 93, 109, 20 N. E. 594, 598 (2 L. R. A. 789), the court said:

"When the subject is expressed, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act, and are germane to the title. The title must be such, at least, as fairly to suggest or give a clue to the subject dealt with in the act, and, unless it comes up to this standard, it falls below the constitutional requirement."

In Economic P. & C. Co. v. City of Buffalo, 195 N. Y. 286, 88 N. E. 389, Judge Chase collated the various holdings of the Court of Appeals upon this subject and said:

"When a special franchise is given in a private act to incorporate a company, it can only be sustained because such special franchise is a necessity incident to the corporation formed. The name of the corporation included in the title may clearly indicate the necessity for a special franchise from some source.  *  *  *  The serious question presented by the defendants is whether the title fairly expresses to the legislators and the public the subject of the act, or whether it is deceptive, misleading, and consequently violative of the Constitution, even if it could be sustained if it had been given a more comprehensive title."

In People ex rel. Olin v. Hennessy, 206 N. Y. 33, 99 N. E. 87, the decision of the court is well expressed in the head note as follows:

"An act may include such provisions as are incidental to its main purpose and subject, as expressed in the title of the act, unless such incidental provisions are so foreign to its main purpose and subject as to mislead and deceive, or tend to mislead and deceive, the members of the Legislature or the public. A provision for the abolition, discontinuance, and avoidance of grade crossings includes, among other things, acquiring property rights and making compensation therefor; hence, the title of the act of 1905 [Laws 1905, c. 634] 'An act to amend chapter 423 of the Laws of 1903, entitled "An act to provide for the abolition, discontinuance and avoidance of certain grade crossings

in the city of New York," ' is not in conflict with section 16 of artcile 3 of the Constitution relative to the title of private or local bills."

It cannot be held, as contended by the defendant, that the title of the act in question must be construed as expressing the purpose simply to "incorporate" the water power company. The title indicated the necessity for a franchise to acquire and operate a water power. It would certainly be assumed that there would be expressed in the act, in conformity with the statute, the purposes for which the corporation was created, and that its powers would also be specified. In Freeman v. Panama R. R. Co., 7 Hun, 122, the title of the act was simply "An act to incorporate the Panama Railroad Company," and one of the objects expressed in the act of incorporation was "purchasing and navigating such steam and sailing vessels * * * as may be proper and convenient to be used in connection with such road." The court held that it was not required, by section 16 of article 3 of the Constitution, that the title of an act "incorporating" a company should set forth all the powers of the company; that so long as the objects of the corporation were limited by the act to one body corporate, they constituted, in mass, the single subject which the act must contain; and the court construed the title as not simply relating to incorporating the company, but to the construction of a railroad, and held that the power of purchasing and navigating vessels was conferable in conjunction with the power to construct a railroad.

In Harris v. Supervisors of Niagara County, 33 Hun, 279, 286, it was said in reference to the effect of section 16, article 3:

"The title should have a fair and reasonable interpretation, not an unnecessarily restricted one. It is not important that it might have been more explicit than it is. It is only necessary that the general subject of the act be expressed in the title. The details may constitute its provisions, and whatever legitimately comes within the general purpose appearing in its title is permissible."

In re Malone Waterworks Co., 15 N. Y. Supp. 649, the act was entitled "An act to *incorporate* the Malone Waterworks Company," and provided for acquiring necessary rights by condemnation. The court held that the act did not violate section 16 of article 3; that the creation of the waterworks company was the subject of the act, and its general purpose; that all measures which would or might facilitate its accomplishment were proper to be incorporated in the act and were germane to the title; and that all matters contained in the act referred to that company, and in a greater or less degree tended to aid in carrying out the objects of its incorporation.

It can hardly be claimed that as to the act in question the right to condemn lands for the purpose of a dam was so foreign to the main purpose and subject of the act, as expressed in it its title, as to tend to mislead and deceive, or that a person reading the proposed bill with the title in mind would be surprised upon coming upon a provision permitting the taking of condemnation proceedings in order to acquire necessary lands for the purpose of the act. That the electric water power company was to operate by water power was definitely indicated by the title; that it could possess no water power until it could acquire one subsequent to its incorporation was certain. It was, therefore,

reasonably to be anticipated that there should be contained in the bill a provision for acquiring lands necessary for carrying into effect the purpose for which the company was incorporated, and that such action was fairly and reasonably connected with the subject as expressed in the title, and was a measure which might facilitate its accomplishment, and was germane to its title, and that, if necessary, resort must be had to proceedings for condemnation.

[2-4] Title to the lands in question could not be acquired by the plaintiff under section 61 of the Transportation Corporations Law, as that is applicable only to towns and villages, and not to cities. The act in question is not violative of any of the provisions of section 18 of article 3, as claimed by the defendant; neither can the contention be successfully made that the act is violative of section 1 of article 8 of the Constitution, which provides that corporations shall not be created by special act, except for municipal purposes, and in cases where in the judgment of the Legislature the objects of the corporation cannot be attained under general laws. Whether a special act was necessary rested wholly in the legislative discretion, and is not subject to judicial review. People v. Bowen et al., 21 N. Y. 517; Metropolitan Bank v. Van Dyck, 27 N. Y. 400, 448; Economic P. & C. Co. v. City of Buffalo, 195 N. Y. 286, 299, 88 N. E. 389.

[5] The defendant also contends that the plaintiff has failed to show that the lands sought to be condemned are required for a public use, or that necessity for its acquisition for such use existed. In February, 1909, the plaintiff entered into a contract with the city of Oneonta, which at the time of instituting these proceedings and at the time of the trial the plaintiff was carrying out, to furnish to said city for five years from March 1, 1909, at least 100 regular commercial standard 2,000 nominal candle power arc lamps to be located on the streets or other public places of the city and to burn continuously every night; also to light the municipal and other public buildings of the city with a current day and night; also to maintain and operate a day and night incandescent lighting circuit to all applicants within the city limits; also to be prepared to supply unlimited power service to all applicants upon reasonable notice and at a reasonable price—the plaintiff agreeing to maintain steam and water power, thus providing a duplicate system against emergencies. The rights acquired by the plaintiff were for public use. As was said in the case of Pocantico Waterworks Co. v. Bird, 130 N. Y. 249, 258, 29 N. E. 246, 248:

"The term 'public use,' as used in connection with the right of eminent domain, is not easily defined. The Legislature has no power to take the property of one individual and pass it over to another, unless the use to which it is to be applied is for the public benefit. The question of public use is a judicial one, and must be determined by the courts. It is not affected by the agency employed, for it may be vested in private persons, who may be actuated solely by motives of private gain, if the use to be made thereof is for the benefit of the public. It has consequently been held that railroads, canals, turnpikes, ferries, sewers, and gas and water companies are for a public use, and the Legislature may give them the right to take the real estate necessary for their use under the right of eminent domain. It is doubtless true that in order to make the use public a duty must devolve upon the persons or corporation holding the property to furnish the public with the use intended. The term implies 'the use of many,' or 'by the public,' but it may be limited

to the inhabitants of a small or restricted locality; but the use must be in common and not for a particular individual. * * * But it is said that the plaintiff has entered into contracts with Rockefeller, Horton, Legate, and others, persons of whom the plaintiff has secured its water rights, to supply them, their cattle, etc., with necessary water. Very true. It also may engage with every householder in the village of North Tarrytown to supply them with water. This would not destroy the public use. It would rather tend to show use by many, and thus establish that the use was for the public benefit."

[6] So long as the intended use of an improvement, sought to be accomplished through an exercise of the right of eminent domain, is not restricted to private parties or private interests, but is open to the whole public, it is no valid objection to the act authorizing it that it will benefit one person, or some class of persons, more than others, or that it originated in private interests and was intended in some degree to subserve private purposes. Matter of Burns, 155 N. Y. 23, 49 N. E. 246. In Matter of Niagara, Lockport & Ontario Power Co., 111 App. Div. 686, 692, 97 N. Y. Supp. 853, 858, it was said:

"The extent of the business contemplated, including as it does the furnishing of electricity for the use of the inhabitants in a thickly settled and extensive territory for illuminating purposes and for the use of extensive street surface railroads, we think constitutes a public use within the definition of that comprehensive term. Pocantico Waterworks Co. v. Bird, 130 N. Y. 249, 258 et seq. [29 N. E. 246]; Matter of Burns, 155 N. Y. 23 [49 N. E. 246]."

The Legislature has considered electric light companies operating under contracts similar to that of the plaintiff as engaged in the public service, and by the Public Service Commission Law has provided for regulating its operations in practically every detail of its business, even including the prices charged by it for its service.

The defendant further urges that it has not been shown that necessity exists that the property be acquired and the dam maintained at its present height, for the purpose of furnishing electricity used in lighting the public places of the city of Oneonta, as there would be ample water power for that purpose without flooding the defendant's lands, and that the plaintiff seeks to acquire defendant's lands simply for the purpose of increasing its power so that it may furnish private individuals with electricity. The evidence shows that practically the whole business of the plaintiff consists in light furnished the municipality and the inhabitants of the city of Oneonta, and establishes the necessity of plaintiff acquiring the land in question in order that the plaintiff's reservoir may be maintained at sufficient height and volume to supply power during a considerable portion of ordinary seasons. When the defendant states that it requires only about 14 per cent. of the total present steam and hydraulic power, or well towards one-half of the steam power, to furnish lighting for strictly municipal purposes, he has neglected to take into consideration the necessities of the public at large for light and power, and the importance of a duplicate plant for service in the event of one plant becoming insufficient or disabled. Concededly plaintiff's plant can be operated at much less expense by water power than by steam power, and it may be assumed that the prices charged by plaintiff for light and power are more or less based upon the fact that the plant can be operated a considerable portion of the year by water power, resulting in a reduced price for the public use.

[7]˙ By necessity is meant not an absolute, but a reasonable, necessity of the corporation in the discharge of its duty to the public.   In re Application of N. Y. C. & H. R. R. R. Co., 77 N. Y. 248.   "Necessity, within the meaning of the rule, does not mean an absolute, but only a reasonable, necessity, such as would combine the greatest benefit to the public with the least inconvenience and expense to the condemning party and property owners consistent with such benefit."   15 Cyc. 633.   When the Legislature has determined the necessity for the exercise of the right of eminent domain to acquire use (as by Laws 1896, c. 338), the validity of the act is not open to question on the ground that the use is not public.   Matter of Burns, 155 N. Y. 23, 49 N. E. 246.   As regards the matter of necessity, the learned referee before whom the case was tried was justified in finding:

"That in order to enable it to generate electricity in such quantities and to such advantage that it may carry out its contract with said municipality for such public lighting, said Oneonta Light & Power Company has constructed, and now maintains, a reservoir for the storage of water taken from the Susquehanna river, in the town of Oneonta aforesaid, and adjoining the lands above specified, with which it develops hydraulic and electrical power for generating electricity for the said purposes of furnishing light and power to said city of Oneonta and the inhabitants thereof.   That the operation of said dam and the impounding of such waters cause the land in question of the defendants Schwarzenbach to be in part unavoidably flooded and in part saturated with water.   That said premises are necessary for the purposes of its incorporation, the proper operation and use of its said reservoir and hydraulic plant, and the supplying of electric lights to the city of Oneonta, N. Y., and its inhabitants, and without the same the business of said company cannot be properly operated."   ·

At the close of his opinion the referee said:

"In justice and fairness, I believe that the plaintiff is entitled to acquire these lands by condemnation.   Nor will the defendants suffer hardship.   The land itself consists of about four acres, unoccupied and without buildings, and of no especial value for any particular purpose.   The only question in which the defendants are in fact interested is the price which they shall obtain for such lands, and it is the general experience that the defendant in such cases obtains the full value therefor."

The defendants do not question the adequacy of the consideration, not having appealed from the report of the commissioners awarding damages.   We conclude that as to the merits of the controversy the final order should be affirmed.

[8] Upon the question of the right of the court to impose the costs of the proceeding upon the plaintiff, it is conceded that the defendants Schwarzenbach were husband and wife, and residents of the state of New Jersey; that both answered and contested the proceeding; that on April 4, 1906, the plaintiff caused to be personally served upon the defendant Arthur Schwarzenbach within this state a written offer to purchase the lands sought to be condemned in this proceeding for the sum of $100 per acre, but that said offer was never filed in the clerk's office of the county of Otsego.   Section 3372 of the Code of Civil Procedure is not applicable to this proceeding as to the matter of costs. That section applies only to condemnation proceedings in cases where the owner is a resident of the state and not under legal disability to con-

vey. The defendants Schwarzenbach being nonresidents, this section no more applied to them than to residents who were under legal disability to convey. We held in the Matter of the State of New York, 152 App. Div. 633, 137 N. Y. Supp. 485, affirmed 207 N. Y. 582, 101 N. E. 462, that where section 3372 did not apply the court had power to award costs under section 3240 in the discretion of the court. Therefore the only question is whether the Special Term erred in awarding costs to the defendant in this proceeding.

[9, 10] While the offer to purchase made by the plaintiff, in April, 1906, is printed in the record, it is not marked as an exhibit, and, so far as the record discloses, was not offered in evidence upon the trial. It appears, however, that a proceeding for the condemnation of this real property, to which the plaintiff and defendant herein were the parties, was on trial July 27, 1906, and it is apparent that the offer above mentioned was made in such proceeding. At that time the merger of the two companies had not been consummated. The plaintiff was not then possessed of the right to maintain such proceedings, and the offer may have been made in view of that fact. In any event the offer does not appear to have been renewed, or to have been recognized by either party as a continuing offer, as upon the trial of this proceeding it was conceded that the parties had made an effort to agree upon the value of the land and had not been able to do so. The only proof in the record as to the plaintiff's estimate of the value of the land is the testimony of the one witness called by it upon the question of value, who placed the value at $25, whereas the award of the commissioners was $325. Whether the plaintiff in the present proceeding, when possessed of the right of condemnation, made an offer greater or less than the award, does not appear. If greater, and the plaintiff intended to ask exemption from costs by reason thereof, or possibly to have the defendant charged with costs, it was incumbent upon the plaintiff, upon the hearing of the motion for the confirmation of the report of the commissioners, to make proof of the offer. Possibly the Special Term, in imposing costs upon the plaintiff, was informed as to the negotiations between the parties, although there is nothing indicating the reason for its action. However, it is the policy of the law, in the absence of anything in the papers on appeal indicating that the discretion of the court should have been otherwise exercised, to affirm the order of the Special Term awarding costs of the proceedings to the owner of the property condemned.

"The Constitution [article 1, § 6] requires that private property shall not be taken for public purposes except upon the payment of 'just compensation,' and a man who is forced into court, where he owes no obligation to the party moving against him, cannot be said to have received 'just compensation' for his property if he is put to an expense appreciably important to establish the value of his property. He does not want to sell. The property is taken from him through the exertion of the high powers of the state, and the spirit of the Constitution clearly requires that he shall not be thus compelled to part with what belongs to him without the payment, not alone of the abstract value of the property, but of all the necessary expenses incurred in fixing that value. This would seem to be dictated by sound morals, as well as by the spirit of the Constitution, and it will not be presumed that the Legislature has intended to deprive the owner of property of the full protection which belongs

to him as a matter of right." . In re City of New York, 125 App. Div. 222, 109 N. Y. Supp. 654.

"We fully agree with the opinion of the judge at Special Term that an extra allowance should be made to the appellant for defending the proceedings to acquire its property, provided the court had power to make such allowance. A person or corporation, whose property is sought to be taken under condemnation proceedings, is entitled to be heard at every step in the process, and in justice should be compensated, not only for the land or property taken, but should be indemnified against all costs and expenses reasonably incurred either in resisting the appropriation or in the proceedings for ascertaining the compensation to be made." In re City of Brooklyn, 148 N. Y. 107, 42 N. E. 413.

These reasons lead to an affirmance of the order appealed from; but, as each party to the proceeding has in part succeeded the affirmance should be without costs of the appeal to either party. All concur.