700   R. M. W., etc., Co., Inc., v. Comrs. P. I. Park.   Nos. 1 & 2.

Second Department, April, 1917.   [Vol. 177.

Ramapo Mountains Water, Power and Service Company, Inc., Respondent, v. Commissioners of the Palisades Interstate Park, Appellants.   Appeal No. 1.

Ramapo Mountains Water, Power and Service Company, Inc., Respondent, v. Commissioners of the Palisades Interstate Park, Appellants.   Appeal No. 2.

Second Department, April 13, 1917.

Eminent domain — respective powers of Palisades Park Commissioners and public service corporations to acquire lands within proposed Palisades Park — public service corporation does not acquire prior right as against Commissioners by first instituting condemnation proceedings — pleading — complaint not stating cause of action — injunction — statutes construed.

The Ramapo Mountains Water, Power and Service Company, a transportation corporation empowered to condemn lands, did not, by filing maps for the purpose of acquiring lands for a source of water supply within the boundaries of the proposed Palisades Interstate Park and by petitioning the Conservation Commission for an approval of their maps and plans, acquire as against the State any rights which prevent the Commissioners of the Palisades Interstate Park from subsequently acquiring said tracts of land for park purpose.

The priority which a public service corporation may acquire as against other public service corporations by first filing maps and plans for the condemnation of certain lands, does not obtain where the State itself desires to acquire such lands for a public purpose.

The clause of the State Constitution providing that forest preserves shall be forever kept as wild forest land only applies to lands of the State now owned or hereafter acquired, and does not prevent the Commissioner of the Palisades Park from acquiring lands which a public service corporation has previously sought to condemn.

As chapter 691 of the Laws of 1906 and chapter 361 of the Laws of 1910 extended the powers of the Commissioners of the Palisades Park over the territory in question, and gave said Commissioners the power to acquire said lands by purchase, gift, devise or eminent domain, the acts of said Commissioners in purchasing the lands in controversy and in making contracts for the future purchase of other portions are the acts of the State itself, and no private public service corporation can curtail the right of said Commissioners by filing a map covering said territory.

Although the statutes provide that said Commissioners may acquire by purchase, gift or devise any lands which they may " select and locate," the words " select and locate " do not require said Commissioners to

make maps of such territory as they may be able to acquire in the manner aforesaid.

For the reasons aforesaid the complaint of the Ramapo Water Company, alleging that it was the first to take proceedings to condemn lands which the Palisades Park Commissioners wish to purchase, fails to state a cause of action, and its motion for a preliminary injunction restraining the proposed action of said Commissioners should be denied.

APPEAL by the defendants, Commissioners of the Palisades Interstate Park, from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 7th day of December, 1916, denying their motion for judgment on the pleadings and overruling their demurrer to the complaint.

Appeal by the defendants, Commissioners of the Palisades Interstate Park, from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 29th day of December, 1916, resettling a prior order entered in said clerk's office on the 7th day of December, 1916, granting an injunction *pendente lite* restraining them from taking any proceedings to acquire title to any lands in the watershed and territory of the towns of Ramapo and Haverstraw, Rockland county, described in the maps and plans filed by the plaintiff with the Conservation Commission of the State of New York. An appeal is also taken from the original order as resettled.

*George A. Blauvelt,* for the appellants.

*R. E. Digney* [*John M. Digney* with him on the brief], for the respondent.

BLACKMAR, J.:

The determining question on both appeals is whether the complaint states facts sufficient to constitute a cause of action.

The plaintiff, organized under the Transportation Corporations Law of the State of New York (Consol. Laws, chap. 63 [Laws of 1909, chap. 219], art. 8), made maps and plans for the purpose of acquiring a source of water supply in the towns of Ramapo and Haverstraw, in Rockland county, and on the 22d day of May, 1916, presented said maps and plans, with a

petition for their approval, to the Conservation Commission pursuant to chapter 647 of the Laws of 1911, being the Conservation Law (Consol. Laws, chap. 65, art. 9, as amd.).  The defendants, a body corporate created by chapter 170 of the Laws of 1900 and acts amendatory thereof, for the purpose of establishing the Palisades Interstate Park, having learned from plaintiff's maps and plans of the location of the lands which plaintiff proposed to acquire, did, during the pendency of the hearings on plaintiff's petition before the Conservation Commission, and without previously making any maps showing the selection or 'location of such lands as part of the Palisades Park, acquire by purchase certain lands lying within the area described on plaintiff's maps, and entered into negotiations for the purchase of other such lands.

The plaintiff thereupon brought this action, seeking to enjoin the defendants from proceeding further to acquire any lands or water rights in said watershed and territory described in plaintiff's maps, and has secured an injunction pending the action to that effect.

It has been held that a railroad company which has filed a map of its route and is regularly proceeding to condemnation has a standing in a court of equity to enjoin another like company from interfering by securing a lease of a portion of the proposed route and laying its tracks thereon.  (*Rochester, H. & L. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.,* 44 Hun, 206; affd., 110 N. Y. 128.)  It was said by Judge GRAY in that case that "When, therefore, a corporation has made and filed a map and survey of the line of route it intends to adopt for the construction of its road, and has given the required notice to all persons affected by such construction, and no change of route is made, as the result of any proceeding instituted by any landowner or occupant, in our judgment, it has acquired the right to construct and operate a railroad upon such line; exclusive in that respect as to all other railroad corporations and free from the interference of any party.  By its proceedings it has impressed upon the lands a lien in favor of its right to construct, which ripens into title through purchase or condemnation proceedings."  This rule also seems to have been applied in a case between a water company and a municipality strug-

gling for the same source of water supply. (*Pocantico Water Works Co.* v. *Bird*, 130 N. Y. 249.)

The plaintiff's claim, as I understand it, rests on the doctrine of these cases, and is that the making of its maps and plans and presenting them to the Conservation Commission, and then proceeding in an orderly way toward acquiring the lands, gave it such a right to proceed without interruption that it can prevent defendants' acquiring such land for park purposes. I say acquiring them for park purposes, for if they are not acquired for public use they are still subject to plaintiff's right to condemn, and there is no need to resort to equity. This doctrine has been re-examined and limited in *People* v. *Adirondack Railway Co.* (39 App. Div. 34; revd., 160 N. Y. 225). The Appellate Division, by a divided court, resting its decision on that doctrine, held that maps and plans filed by the defendant gave it such a right in the land covered by them that the State could not acquire it by eminent domain for the Adirondack Park. But the Court of Appeals, in reversing, carefully stated and defined the right which a railroad company acquired by filing maps of the route, in the following words: " The effect of the map when filed was to give warning to other railroads that a certain route had been pre-empted by the defendant. It established no right against the owner, because the Constitution forbids it; it established none against the State, because its power is paramount, but as against all other railroad companies and as against all other creatures of the State, empowered to use the right of eminent domain, it gave the exclusive right to occupy the particular strip of land for railroad purposes until the Legislature authorized it to be devoted to some other public use." In *People* v. *Adirondack Railway Co.* (*supra*) it was held that the State could appropriate the land for a park notwithstanding that the railroad company had filed the map of the route and was regularly proceeding to acquire the land. Whatever else may be said, it is established that filing the map gave no rights as against the State. Now the Commissioners of the Palisades Interstate Park are a public corporation. (*Economic P. & C. Co.* v. *City of Buffalo*, 195 N. Y. 286.) The park is to be established in the interests of the people at large. The Com-

704  R. M. W., ETC., CO., INC., *v.* COMRS. P. I. PRRK.  NOS. 1 & 2.

Second Department, April, 1917.            [Vol. 177.

missioners are appointed by the Governor and serve without compensation.  (Laws of 1900, chap. 170, § 1.)\*  They are to act in conjunction with the State of New Jersey in establishing a continuous park, lying in both States.  (Id. § 5.)  The public alone is to be interested in the park.  The lands which are acquired for park purposes are to be held "in trust for the People of the State of New York."  (Id. § 7.)  The establishment and maintenance of the park seems to me as much the act of the People of the State as in the case of the Adirondack Park.  In the latter case the State acts direct through Commissioners or a Commissioner now known as the Conservation Commission appointed by the Executive, and in the former through a public corporation.  (See Conservation Law, § 2, as amd. by Laws of 1915, chap. 318, and Laws of 1916, chap. 257; Id. § 50 *et seq.*, as added by Laws of 1916, chap. 451; Laws of 1900, chap. 170, § 2, as amd. by Laws of 1914, chap. 15, and Laws of 1915, chap. 562.)  The interest of the State in each case is the same, and in neither case is there any intermixture of private interests. I fail to see how the provision of the State Constitution providing that the forest preserve shall be forever kept as wild forest lands (Const. art. 7, § 7) affects the question, because that provision applies only to the lands of the State "now owned or hereafter acquired."  A regulation of the use of the land after acquisition does not affect either the right of a public service corporation or of the State to acquire it.

By chapter 691 of the Laws of 1906 and chapter 361 of the Laws of 1910, amending chapter 170 of the Laws of 1900, the power of the Board of Commissioners of the Palisades Interstate Park to acquire lands for park purposes was extended to territory including the land in question.  The board was given power to select and locate the land "as soon as said board shall deem it feasible and advisable," and to acquire the land so located by purchase, gift, devise or eminent domain.  (See §§ 4, 5, as amd. *supra.*)  All the territory included within the domain described in the act was subject to the power of the board to select, locate and acquire it for park purposes.  Their act in so doing was the act of the State, and under the case of

\* See, also, Laws of 1901, chap. 504.— [REP.

*People* v. *Adirondack Railway Co.* (*supra*) no private public service corporation could curtail such right by filing a map.

I do not read the act as providing that the board could not acquire land for park purposes by purchase, gift or devise until after making the maps required in section 6 of the act. That is made a condition precedent to acquiring the land by eminent domain. They could acquire by purchase, gift or devise, any land which they should "select and locate" (§§ 4, 5 of the act), and the words "select and locate" do not by implication require the making of maps. The power of the board extended over a large extent of territory. The wording of the act shows that the park may consist of disconnected parcels, for it authorizes the acquiring of rights of way for "roads between and connecting any separated portions of said park." (§ 5 of the act.) I think the words "select and locate," particularly as applied to the extension of the park, used in the acts of 1906 and 1910, permit the acquisition of land by purchase, gift or devise without making the maps provided for in section 6. Either the lands were purchased by the board acting within its powers, thereby becoming part of the park and subjected to a permanent State use, or, if the board in purchasing did not act within its powers and the land did not become subject to a public use for park purposes, the purchase imposed no impediment to plaintiff's condemnation proceeding. The complaint, therefore, fails to state a cause of action.

Whether the plaintiff, a public service corporation, or the defendants, a State agency, have priority in right to appropriate the land in question, is for the Legislature to determine. We decide only, construing the statutes as they now exist, that the plaintiff by filing maps and proceeding before the Conservation Commission did not, as against the defendants, secure right of pre-emption.

The same reasoning disposes of the injunction. In addition, it may be observed that an injunction pending the action which is permissible to preserve the situation until trial, in this case, ties the hands of the defendants and leaves the plaintiff free to proceed in acquiring the land.

The order denying defendants' motion for judgment and

overruling the demurrer should be reversed, with ten dollars costs and disbursements, and defendants' motion for judgment granted, with costs.

The order granting the motion for an injunction should be reversed, with ten dollars costs and disbursements, and the motion denied, with costs.

JENKS, P. J., STAPLETON, MILLS and RICH, JJ., concurred.

Order denying defendants' motion for judgment and overruling demurrer reversed, with ten dollars costs and disbursements, and defendants' motion for judgment granted, with costs. Order granting motion for an injunction reversed, with ten dollars costs and disbursements, and motion denied, with costs.