JONES, District Judge
(after stating the facts as above). If the statute under review be unconstitutional, plainly a suit seeking injunctive relief against the persons charged with its execution cannot be a suit against the .state. The state is not a party to the record. No judgment which can be rendered in the suit can take any property'of the state, or fasten liens upon it, or interfere with the disposition of funds in its treasury, or compel the state, indirectly, by controlling its officers, to affirmatively perform any contract, or to pay any debt, or- direct the exercise of any discretion committed to its officers in the execution of any valid statute. Under these circumstances, the decisions of the Supreme Court, from the case of Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. *170 204, down to Ex parte Young, 209 U. S. 152, 28 Sup. Ct. 441, 52 L. Ed. 714, are unbroken in holding that the suit against the officers is not a suit' against the state. When the Legislature or Congress attempts by the enforcement of invalid statutes to destroy a right secured by the Constitution or laws, they overstep the limits of their power and their enactments are mere nullities. Such legislative excesses cannot be set up to shield those acting under them from personal responsibility for their acts, and whenever trespasses are threateñed, and will result in irreparable injury to a property right, if not prevented, a court of equity will enjoin the execution of an invalid statute. If such suits against individuals are suits against the state, of which a court has no jurisdiction without the consent of the state, the power of the courts to enforce many sacred constitutional safeguards for the protection of liberty and property of the citizen, when illegally assaulted under the forms of law, would be entirely defeated. The doctrine is utterly at war with our system of constitutional government. Central of Ga. Ry. Co. v. Railroad Commission (C. C.) 161 Fed. 1000; Ex parte Young, 209 U. S. 152, 28 Sup. Ct. 441, 52 L. Ed. 714.
2. Section 240 of the Constitution of Alabama of 1901 ordains r
“All corporations shall have the right to sue, and shall be subject to be sued, in all courts in like cases, as natural persons.”
This section is found in an article regulating “foreign corporations,” and “corporations chartered under the laws of this state,” which carefully discriminates between the two classes of corporations. It is evident from the dropping, in the close of the article, of all distinction in regard to the right to sue and be sued, and using the words “all corporations,” that the framers of the Constitution intended to put corporations of every kind upon the same footing as to their right to resort to “all courts.” It has been urged that this language could not have been intended to refer to the federal courts, since the framers of the state Constitution would, naturally, not attempt to make provision for suits in federal courts, the right to resort to which is conferred and governed solely by the Constitution and laws of the United States. True, the state could not give the right, but it could disable itself by its fundamental law from interfering with a foreign corporation because it exercised the right. In view of the history of the original section,, and its sweeping words which imply no exceptions, we are not authorized to construe the section as though the words “of this state” were interpolated after the words “in all courts,” and thus contract the right given to a mere right to sue and be sued “in all courts of this state.” The framers of the Constitution were dealing with the broad subject of suits, by and against all kinds of corporations, in all courts which administer justice in this state. The property rights of corporations are litigated and settled quite as often in the federal courts as in the state courts. The section has a remedial purpose, and must be construed liberally, rather than narrowly. Moreover, words in a Constitution must be deemed to have been used in their popular sense, unless in some way the contrary can be fairly gathered from the whole instrument. To construe this section as though it read “in all courts of this state” would be to interpolate words which the framers of the Consti *171 tution designedly omii'íed, and to make rather than interpret the Constitution. At common law, as well as under its statutes ever since the admission of the state into the Union, corporations had the right’ “to sue and be sued in all courts, in like cases as natural persons.” If the section intended nothing more than to reaffirm this right, if would have been entirely unnecessary. Its incorporation in the fundamental law had a broader and deeper purpose. The traditional policy of the state, up fo the time of the formation of the Constitution of 1875, had been to invite foreign corporations to do business in Alabama, and to put no restrictions upon their exercise of the right because of the forum in which they might wage their litigation. The contrary policy had been adopted in some states about that time, and its wisdom had been the subject of much discussion. The policy was deemed by many to be inimical to the true spirit of our institutions, and it was believed that it prevented the inflow of capital and immigration from other states. The capital invested by foreign corporations doing business here is the property of natural persons, generally citizens of other states, who very reasonably object to having to pay as the price for the privilege the surrender of a valuable constitutional right which all other citizens, natural as well as artificial, can freely enjoy. They are often loath to go into a state or put their money there, where they may become engaged in litigation, and yet have to forego the choice of the forum in which their property rights would be determined. The condition of our state at the time of the formation of the Constitution of 1875 was such that the people deemed it exceedingly desirable to encourage immigration and capital from abroad, and to refrain from legislation which might prevent or discourage such aids to the future progress of the state. The framers of the Constitution of 1875, therefore, desired to assure all who invested their capital in business here that the state would not attempt to confine them to litigation in its own courts, or to put any burdens or penalties upon their right to do business here if they resorted to the courts of the United States. They designed to put all corporations upon a plane of absolute equality in those respects with natural persons. As natural persons can sue and be sued in all proper cases in all courts, state or federal, the foreign corporations would have the same right; and, the right being given by the fundamental law, the state would be powerless to attach any conditions to its exercise by the foreign corporations which did not apply equally to natural persons, whose rights to do business can never be forfeited or descriminated against because they litigate their business affairs in one court rather than another. Hence the whole matter was thus taken out of the realm of legislative discretion, and the policy of the state fixed and announced to all whom it might concern, in its fundamental law.
This provision was construed by the Supreme Court of Alabama in Railroad Company v. Morris, 65 Ala. 199, and Smith v. L. & N. R. R. Co., 75 Ala. 451. In the latter case, the court, after quoting the words of Justice Field (County of San Mateo v. Southern Pac. R. Co. [C. C.] 8 Sawyer, 238, 13 Fed. 722), that section 1 of the fourteenth amendment applied to corporations as well as natural per *172 sons, and implied not only the right to resort on the same terms as others to the courts of the country for the security of person and property, but also exemptions from all invidious burdens, etc., said:
“This question, however, would seem to be settled by our own state Constitution, art. 14, § 12 (now section 240), which ordains ‘that all corporations shall have the right to sue, and shall be subject to be sued in all courts in like cases as natural persons.’ ”
The court further held:
“That the sum of these provisions is that no burden can be imposed upon one class of persons, natural or artificial, that is not in like conditions imposed upon all other classes.”
When a constitutional provision has received a seftled construction and is afterwards incorporated into a new or revised Constitution, it must be presumed to have been retained with a knowledge of that construction, and the courts will therefore feel bound to adhere to that construction. Ex parte Roundtree, 51 Ala. 42. The words of section 240 of the present Constitution must therefore receive the same construction given them under the prior Constitution of 1875, for they must be presumed to have been inserted in the present Constitution with that meaning. This construction of the section by the highest court of the state is binding upon every court, state or federal, even though the federal court, in the exercise of its own independent judgment, might reach a different conclusion.
Under the laws of Alabama, no domestic corporation, much less a natural person, is punished by the forfeiture of any right whatever if it bring a suit in the federal court, as it may when a federal question is involved, or remove a case to the federal court, as it may when sued in the state court by a citizen of another state. Directly the opposite rule is declared by the statute if the foreign corporation resorts to the federal court. The statute declares that although the Constitution gives all corporations, foreign and domestic, the right to sue and be sued on equal terms with natural persons in all courts, yet if the foreign corporation goes into a particular court it shall be subject to an invidious penalty, going to the extent of forfeiting its right to do business here, which penalty is not, and cannot be, visited upon domestic corporations and natural persons under these circumstances. The statutes are therefore a plain attempt to defeat the enjoyment of the perfect equality which the Constitution commands in this respect, and, being hostile to its commands, are mere nullities. They are also obnoxious to section 1 of the fourteenth amendment, in that they deny the equal protection of the laws by inflicting pains and penalties upon one person or class of persons for doing an act which, when done by any other person, under the same circumstances, subjects him to no burdens or pains whatever, and in no manner interferes with his right to do business in this state.
3. The same result is inevitable, if the court gives any effect to section 239 of the state Constitution, which reads as follows:
“Any association or corporation organized for tbe purpose, or any individual, shall have the right to construct and maintain lines of telegraph and telephone within this stafe, and connect the same with other lines; and the *173 Legistatare, by general law of uniform operation, shall provide reasonable regulations to give full effect to this section.”
. This section gives any corporation, organized for the purpose, the right to construct and maintain telegraph lines in this state. This is the right to which the Legislature is commanded to give full effect. In compliance with the Constitution, foreign telegraph, companies were invested with the power of eminent domain and otherwise regulated. The Constitution left no power in the Legislature save to “provide reasonable regulations” for conducting the business. The business to be regulated is that of constructing and maintaining telegraph lines. The corporation is not carrying on that business when it seeks justice in the courts. Forfeiture of a right to do business because the owner resorts to the courts is not “reasonable regulation” of the telegraph business. It is not regulation of the business in any sense. It is destruction of the right to do the business. The power to destroy a business never exists when the only grant of authority over the subject is to regulate the carrying on of the business.
It is an accepted canon of constitutional law that the exercise of a constitutional right in a lawful way can injure no one. Whenever and to whatever extent the Constitution speaks on a particular subject, to that extent the police power is displaced, and has no function thereafter, save as it may he useful in furthering the constitutional policy. The only reason for the existence of the police power, and which alone upholds its exercise in any case, is that it is necessary or proper for the promotion of the public welfare, and, where the Constitution has spoken, the police power must follow, and cannot antagonize its commands. The Constitution of the state gives the telegraph company the right to construct and maintain lines in Alabama, and the Constitution and laws of the United States give the telegraph companies the right to resort to the federal courts. Upon what theory, then, can the state, under its police power, or any other power, interfere, as the statutes here attempt to do, with the proper enjoyment of either right, or lawfully declare that the exercise of one constitutional right shall work the forfeiture of the other constitutional right? The .destruction here attempted of these constitutional rights can be vindicated only on the theory that the operation of the Constitutions of the state and of the United States, and the exercise of rights thereunder, are so prejudicial to the well-being of the state, and such a menace to the public weal, that the police power, which can never come into existence except to save the state from harm or promote its welfare, must intervene and rescue the state from the effects of obedience to the fundamental law of the state and nation. It is a startling doctrine to proclaim that there is any power in the Legislature to confiscate one of a man’s constitutional rights because he exercises another of his constitutional rights. The logic which would sustain such an exercise of power must be rejected, since its acceptance would enthrone Legislatures above Constitutions, and finally overthrow our constitutional institutions. The telegraph company being engaged in business here under a grant of authority from the Constitution of the State, the Legislature has no more power to con *174 fiscate that right because it resorts to the federal courts, in the exercise of a right given by the Constitution and laws of the United States, than it would have to confiscate any other vested property right of any other person under the laws of the state, because he exer-. cised the right, arising under- the Constitution and laws, to resort to the mails of the United •'States in carrying on his business.
The bringing of a suit by a foreign corporation in a- federal court to assert any right given it by the law of the land touches nothing of which the police power of the state is the guardian, and cannot give rise to legislative power, under any head, to hamper or forbid the resort to that court, or punish a person for so doing by destroying a business in which a person has a constitutional right to engage. Joseph v. Randolph, 71 Ala. 506, 46 Am. Rep. 3.47. The telegraph company having come into the state and acquired property and done business here, as it had the constitutional right to do, its business and property are secure against all hostile action of the state except for forfeiture for cause, for misuser, or nonuser, prescribed by the law of the land, and applicable alike to all persons and corporations similarly situated, pronounced by judgment of the courts after hearing, and not by statutory edict. A statute which attempts to forfeit a man’s property or business because he exercises a constitutional right in a lawful way, in a resort to the courts of his country for justice, transcends all the bounds of legislative power, and is a mere edict of despotism. No court which sits to administer the fundamental law, alike of the state and of the United States, can recognize it as a legitimate exercise of power. In the language of section 35 of the Declaration of Rights:
“The sole object and only, legitimate end of government is to protect tbe citizen in tbe enjoyment of life, liberty and property, and when tbe government assumes other functions, it is usurpation and oppression.”
4. In the passage of this statute, and a similar one before this court in Seaboard Air Line Ry. Co. v. Railroad Commission (C. C.) 155 Fed. 792, the Legislature necessarily held there was no constitutional provision, state or federal, which prevented the state, under all circumstances, from arbitrarily expelling any foreign corporation from doing intrastate business if it remove a suit to the federal court, for no exception whatever is made in the operation of the statute as to any corporation doing intrastate business in any case or under any circumstances. It is a part of the history of the times that the Legislature supposed it had such power, under the doctrine declared by the Supreme Court of the United States in Prewett v. Life Insurance Co., 202 U. S. 252, 26 Sup. Ct. 619, 50 L. Ed. 1013. The pith of the Supreme Court’s reason for refusing to interfere with the expulsion there is thus stated in its own words:
“This is justifiable, because complainant showed no constitutional right to do business in that state. * * * This is tbe whole point of tbe case, and, without reference to tbe injustice or prejudice or wrong alleged, must determine tbe question.”
Clearly that decision is direct authority against the right of expulsion in this case, since complainant here has a constitutional right *175 to do the business — “to construct and maintain lines of telegraph within this state.”
The Supreme Court was not attempting in that case to lay down any general rule as to when a stale waived or parted with its absolute sovereign prerogative to expel a foreign corporation at will, as distinguished from its right to expel for cause, or to enunciate the doctrine that in some cases the Constitution of the United States would not forbid the exercise of the prerogative. In that case, there being no estoppel or waiver, nor any provision of the Constitution of the United States, which militated against the exercise of the absolute jwerogative, the court held the fact that the state gave an invalid reason, offensive to public policy, such as the removal of a suit to the federal court, could not affect the legality of the expulsion, lawful in itself, whatever the motive. It did hold, however, that any statute exacting an agreement in advance to abstain from the federal court was a nullity, unless other provisions of the expulsion statute were separable, and intended to be enforced when standing alone. The Supreme Court in that case merely stated the general rule, which has always obtained in our jurisprudence, that a corporation, a mere artificial person, chartered under the laws of one state, could not migrate to another state and exercise its powers there without the consent of that state, save to carry on interstate commerce or the operations of the general government. As the foreign corporation had no right to come into the borders of another state to do a local business, the court held that the other state might deny it admission in the first instance, or not having prescribed conditions in advance, and merely permitted the foreign corporation to remain on pure sufferance, or by comity, might, nevertheless, afterwards arbitrarily expel it for removing a suit to the federal court, or for any other reason or motive which the state might deem sufficient. This is the sum and substance of the whole ruling in Prewett’s Case. That case is far from deciding that a foreign corporation may be expelled, under any and all circumstances, at the mere pleasure of the state, and when taken in connection with prior and subsequent decisions of the Supreme Court, it is clear that case never intended to assert such a doctrine.
It has not been doubted since the great case of Fletcher v. Peck, 6 Cranch, 88, 3 L. Ed. 162, that a state, in the language of Chief Justice Marshall, is “restrained, either by principles which are common to our free institutions, or by the particular provisions of the Constitution of the United States,” from arbitrarily withdrawing its own grant; and the reason of the doctrine applies as well to the arbitrary withdrawal of a grant of a right to do business, and to hold and use property acquired in the business, when investments have been made on the faith of the state’s laws, and vested rights have arisen in the business, as where there has been a direct grant from the state of real property to a particular individual. It is equally well settled that the department of the government which represents the sovereignty of the state or of the United States in dealing with any particular matter may, by its conduct, estop the state or the United States, as the case may be, from arbitrarily withdrawing the grant of a right, and disappointing the just expectations which its laws and conduct raised, *176 to the prejudice of one who has relied and acted on its laws and the acts of its officers, when such action of the state will forfeit his property, rip up completed transactions, or prevent the future exercise of-rights which vest in and flow from the original transaction. United States v. Walker (C. C.) 139 Fed. 412, and-authorities there cited.
The right to expel foreigners is an attribute of sovereignty. An independent sovereign may exercise the power arbitrarily, if he chooses, being responsible solely to the power whose subject he expels, under the law of nations. An independent sovereign may also waive the right, or disable himself from exercising it, by treaty with another sovereign, or by particular concessions to the foreigner who might otherwise, lawfully, be arbitrarily expelled. The states of this Union are sovereign, except in so far as they have delegated their sovereignty. But for the Constitution of the United States, each of the states might impose what conditions it pleased upon the coming and remaining in their borders, of natural persons, citizens of other states. While the states of the Union do not stand to each other in the relation of. independent sovereigns, and the Constitution of the United States is much more than a treaty between them, several of its provisions operate upon the power of the state to expel a foreign corporation as effectually as a treaty would between wholly independent sovereigns. The prohibitions the Constitution puts upon certain exercises of power by the states inevitably, in many situations, forbid the exercise of absolute sovereign prerogative to expel a foreign corporation at pleasure. The states are forbidden to pass laws impairing the obligation of contracts, or to deprive any one of life, liberty, or property without due process, or to deny to any one within their jurisdiction the equal protection, of the laws. A foreign corporation may acquire a vested-right to do intrastate business, which is protected by the Constitution of the United States from destruction by the exercise of the arbitrary prerogative of expulsion, in other ways than by the direct grant, as in the instant case, in the ■ Constitution of the state. It may acquire a vested right to do business by laws inviting foreign corporations to invest in property and do business here, giving it certain privileges if it does, if the corporation acts upon the faith of these laws and performs their conditions. The state may also confer a vested right to do business by authorizing the foreign corporation to purchase and succeed to the franchise and business of domestic corporations, if it purchase in reliance upon these laws. By these and other like acts; the state may abandon and waive its sovereign, arbitrary prerogative of expulsion, and be prevented by the operation of the Constitution of the United States from exercising it. No act of the state is lawful which will impair the obligation of contracts it has authorized, or deprive the foreign corporation -of property without due process of law, or deny to it' the equal protection of the laws. The prerogative must be exercised in subordination to the Constitution of the United States, and cannot be made the instrument of accomplishing results which the Constitution of the United States forbids a .state to bring about.
Some other interesting questions are raised by the bill which it is unnecessary to decide at this time. Plainly, the statute under review *177 violates both the Constitutions of tlie state and of the United States, and it is evident that its enforcement would inflict irreparable injury upon the complainant, and work great harm to the public,
A preliminary injunction must issue as prayed.