THE CITY OF NEW YORK, Appellant, *v.* THE VILLAGE OF LAWRENCE and Others, Respondents.*

First Department, December 21, 1928.

* Affd., 250 N. Y. 429.

*George P. Nicholson, Corporation Counsel* [*William E. C. Mayer, Robert J. Culhane* and *J. Joseph Lilly* of counsel], for the appellant.

*Van Doren, Conklin & McNevin,* attorneys [*Edward S. Bentley* of counsel], for the respondents Village of Lawrence and others.

*H. Stewart McKnight,* attorney [*M. Linn Bruce, Fred Ingraham, Jr.,* and *Raymond Ballantine* of counsel], for the respondents Nassau County and others.

*Albert Ottinger, Attorney-General* [*Robert P. Beyer, Deputy Assistant Attorney-General,* of counsel], for the respondent Attorney-General of the State of New York.

Present — Dowling, P. J., Merrell, Finch, McAvoy and Proskauer, JJ.

The following is the opinion of the court below:

Sherman, J.   Plaintiff's right to injunctive relief is postulated upon the alleged unconstitutionality of chapter 802 of the Laws of 1928, which became a law on April 5, 1928.   It is entitled: " An act to define the boundary line between the city of New York and the town of Hempstead along the eastern and southerly boundary lines of the former village of Far Rockaway."   Section 1 of the act declares the boundary line between the city of New York and the town of Hempstead; section 2 states that the intention of the Legislature in theretofore establishing this boundary line was to fix it in accordance with the line as established in the act.   The remainder of the enactment deals with the levying and collection of taxes upon the property affected by the act, and annexes the territory to the village of Lawrence.   It appears that for many years uncertainty has existed as to whether or not the strip of territory affected by this legislation lay within the confines of the

city of New York, as established by the Greater New York Charter.
Prior to this enactment meetings had been held between repre-
sentatives of the municipalities concerned, seeking to arrive at a
satisfactory solution of the problem. In effect this enactment
fixes the boundary line so that a strip of unimproved land varying
in width from 100 to 400 feet, and approximately 5,000 feet in
length, becomes definitely subject to the governmental authority
of the county of Nassau, the township of Hempstead and the
village of Lawrence. Upon the passage of this act the village of
Lawrence took over the control and administration of the territory
and is now engaged in policing it, in paving a street, and has sub-
jected it to other municipal activities. Plaintiff, asserting that all
such governmental powers are vested in the city of New York,
seeks through this suit to forbid such administrative activity.
It contends that this act is unconstitutional because it was a special
or local law "relating to the property, affairs or government"
of the city of New York, and, therefore, under section 2 of article 12
of the Constitution it could not be enacted except upon message
from the Governor declaring that an emergency existed, and by
the concurrent action of two-thirds of the members of each house.
Its constitutionality is further assailed as being in violation of
section 7 of article 12 of the Constitution, which provides that all
existing charters and other laws shall continue in force until repealed,
amended, modified or superseded in accordance with the provisions
of article 12. The act was passed without any emergency message
from the Governor. These provisions of the Constitution above
referred to are known as the "Home Rule Sections," and were
adopted or amended in their present form in November, 1923.
That this statute is special or local, both in its terms and effect,
is clear. (*Schieffelin* v. *Warren*, 224 App. Div. 115.) The impor-
tant question is, therefore, whether or not this legislation relates
to the "property, affairs or government" of New York city. A
municipal corporation has no power, except such as is given to it by
the Legislature, which may modify or recall it. (*Matter of McAneny*
v. *Bd. of Estimate, etc.*, 232 N. Y. 377, 390.) Under article 3 of the
Constitution all of the legislative power of the State is vested in
the Senate and Assembly. Except as restricted by the Constitu-
tion, the Legislature has power to divide the geographical subdi-
visions of the State, in any manner deemed by it proper. (*Matter
of McAneny* v. *Bd. of Estimate, etc.*, 232 N. Y. 377, 389.) Sec-
tion 5 of article 3, which deals with the political subdivisions
of the State, specifically provides that this power shall remain
unaffected even by that section of the Constitution. Such power
is innate in the sovereignty of the State, for the subdivisions of
the State are merely governmental agencies of that sovereign

power.   (*Laramie County* v. *Albany County*, 92 U. S. 307;  *Kelly* v. *Pittsburgh*, 104 id. 78.)   Plaintiff concedes that this power to change boundary lines is reposed in the Legislature, but asserts that it was improperly exercised here, in the absence of an emergency message from the Governor and the concurrence of two-thirds of both houses.   Consequently, the question to be decided is whether or not the law, which changes a territorial line and so, it is asserted, lessens the domain of the city of New York, relates to the " property, affairs or government " of the city.   The case turns upon the meaning to be given to those words.   Prior to the Constitutional Convention of 1894 the constitutional provisions relating to cities were found in sections 9 and 11 of article 8, making it the duty of the Legislature to provide for the organization of cities and affecting the debt limit and purposes and rate of taxation; in section 2 of article 10, providing for the election or appointment of city officers.   That Constitutional Convention considered various suggestions looking to a greater measure of home rule and reported a proposed amendment which was adopted and became article XII. (*McGrath* v. *Grout*, 69 App. Div. 314, 318.)   The majority report of the committee on cities (Steele's Revised Record of the Con- stitutional Convention, vol. 5, p. 533) formulated this proposed amendment which provided (Art. 12, § 2) how laws " relating to the property, affairs or government of cities " should be enacted. That was the genesis of the use of those words in the Constitution. That report enumerates in nine subdivisions the matters which were deemed to be within the purview of that language.   The power of cities over such matters was to be unchangeable except by general laws, or by laws affecting all cities having a designated population, or by the consent of the city affected.   The method of obtaining consent was provided whereby acts were to be trans- mitted to the local authorities of the municipality affected for their approval.   It clearly appears that the words " property, affairs or government " were intended to embrace merely matters of munici- pal administration.   The essential sovereignty of the Legislature in all other respects was preserved.   Special laws were later passed which had not been transmitted to the mayor of a city for its accept- ance and the scope and meaning of these words thus came before the courts in attacks upon such legislation.   In *McGrath* v. *Grout* (171 N. Y. 7) the act required the city of New York to pay the salaries of certain county officers of Kings county and it was held that it did not affect the property, affairs or government of the city.   In *People ex rel. Unger* v. *Kennedy* (207 N. Y. 533) the legislative act which created Bronx county and provided that the city of New York should defray certain expenses was held con- stitutional, although it had not been transmitted to the mayor

for acceptance by the city. These decisions point to the view that this phrase was regarded as connoting matters of administration wholly municipal in character. (See *Browne* v. *City of New York*, 241 N. Y. 96.) These words, which had thus received judicial interpretation and acquired a defined meaning, were retained in the Home Rule Amendments adopted in 1923, and must be given their established meaning. (*Western Union Telegraph Co.* v. *Julian*, 169 Fed. 166.) The plaintiff never had any " property " in these vacant lands beyond such control as is involved in the relationship of a municipality to all property within its geographical limits (*People* v. *Kerr*, 27 N. Y. 188; *Hunter* v. *Pittsburgh*, 207 U. S. 161); the lands are privately owned. Nor can it be maintained that the " government " of the city has been in anywise affected by this act. Its powers are maintained intact; the only effect of the legislation is to curtail the area of their operation. A clear distinction exists between those activities of a municipal corporation which are made immune by the Constitution from legislative interference except in the case of an emergency and the dimension of the territory over which that corporation may function. The " affairs " of the city are not touched by this legislation, for the " affairs " of the city may be said to embrace its internal business, its finances, its contracts and the like. Section 7 of article 12 must be construed in conjunction with the related Home Rule Amendments and the charters and laws therein referred to are manifestly only such as affect the property, affairs and government of a city. The foregoing views lead to the conclusion that this act is within section 4 of article 12: " The provisions of this article shall not be deemed to restrict the power of the Legislature to enact laws relating to matters other than the property, affairs or government of cities." The motion for a preliminary injunction is denied.